**DIRECT ACTION FOR RIGHTS AND EQUALITY**

v.

**Bernard E. GANNON, in His Capacity as Chief of Police of the City of Providence.**

**No. 96–369–Appeal.**

Supreme Court of Rhode Island.

June 4, 1998.

Michael G. Sarli, Providence, for Plaintiff.

Richard Riendeau, Charles R. Mansolillo, Catherine E. Graziano Edward C. Roy, Jr., Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case involves the disclosure of certain records pursuant to the Access to Public Records Act (APRA). Finding no genuine issue of material fact, a Providence County Superior Court trial justice granted the plaintiff's motion for summary judgment and ordered the defendant to release all the requested documents. Significantly, however, the trial justice also ordered that these documents be released in unredacted form. Although we believe the trial justice was properly guided by his concern for full disclosure in an effort to benefit the general public, we are nonetheless of the opinion that he exceeded his authority. We reverse in part.

## I

### Facts and Travel

The plaintiff, a community-action group called Direct Action for Rights and Equality (DARE), sought access to Providence police department records pertaining to civilian complaints of police misconduct. On or about September 17, 1993, DARE filed a written request with defendant, Bernard E. Gannon, in his capacity as chief of police for the city of Providence (city), asking for:

"a.) Every 'Providence Police Civilian Complaint report' (Form 210) filed within the Providence Police Dept. from 1986 to present.

"b.) A listing of all findings from investigations that was [sic] conducted by the Bureau of Internal Affairs, in reference to all 'Providence Police Civilian Complaint re-

ports' (Form 210) on record from 1986 to present.

"c.) All reports made by the 'Providence Police Department Hearing officers[ ] on thier [sic] decesions [sic] from the findings of investigations conducted in Re: Providence Police Civilian Complaints' (Form 210) from 1986 to present.

"d.) Reports on all disciplinary action that's [sic] been taken as a result of recommendations made by the Hearing Officers['] Division since 1986 to present." [1]

The request by DARE also "acknowledge[d] that under law there will be deletions of names and addresses of the complaintants [sic] as well as officers listed in the reports" and demanded compliance with its request "within 10 days as the law stipulates." See G.L.1956 § 38–2–7. After the city failed to comply with its request, DARE appealed to John J. Partington (Partington), the Commissioner of Public Safety, in a letter dated December 27, 1993, again requesting access to the pertinent records. Following this correspondence, representatives from DARE met with Partington and other various representatives of the Providence police department. During this meeting, the representatives from DARE learned that the city was presently awaiting a written decision from its solicitor, Charles Mansolillo (Mansolillo), regarding the release of the records DARE sought, and that pending Mansolillo's decision, the city would process DARE's request. Apparently frustrated with the delays, DARE wrote a letter to the Attorney General, on September 28, 1994, appealing for assistance.

---

1. These requested documents are maintained by the Providence police department pursuant to a consent judgment entered in the United States District Court case *Coalition of Black Leadership, et al. v. Joseph A. Doorley, et al.*, Civil Action No. 4523. This consent judgment, which established the procedure for processing civilian complaints concerning police misconduct, mandates that the Providence police department adopt a uniform civilian complaint form (form 210) and upon the receipt of such a complaint, the Bureau of Internal Affairs assign an officer to investigate the complaint. Following the investigatory phase, an evidentiary hearing is held before a designated officer. This hearing officer then makes written findings of fact and finds the police officer

either "guilty" or "not guilty." Copies of the hearing officer's report are then forwarded to all parties and to the police chief, who approves or rejects the hearing officer's findings within thirty days. The police chief's final action is recorded on the hearing officer's report, and notice of this decision is sent via certified mail to all parties. *See The Rake v. Gorodetsky*, 452 A.2d 1144, 1146 (R.I.1982).

Although DARE's request covers the years 1986 to the present, the record evinces that these records exist only from 1988 onward. Pursuant to our holding in this case, DARE is entitled to redacted records contained in categories (a), (c), and (d) of its request to the extent that these records exist.

In an unofficial opinion dated November 10, 1994, the Attorney General's office concluded that neither the complaints nor the findings of investigations made by the Bureau of Internal Affairs represented "final action" and that, therefore, requests (a) and (b) were "expressly excluded under the [APRA]" from public disclosure. Regarding request (c), the Attorney General's office relied on this Court's holding in *The Rake v. Gorodetsky*, 452 A.2d 1144 (R.I.1982) and determined "that reports made by the hearing officers which include the action of the police chief noted thereon represent final actions taken on the matter. Consequently, the reports are subject to disclosure under the [APRA], provided that the reports do not identify the citizen complainants or police officers." Finally, the Attorney General's office opined that DARE's request for records concerning disciplinary action taken based on the recommendation of the Hearing Officers' Division, request (d), was properly denied since it fell within the exception prohibiting the disclosure of records "maintained to * * * discipline any employee of a public body." *See* G.L.1956 § 38–2–2(d)(1), as amended by P.L.1991, ch. 208, § 1.[2] In a letter dated November 28, 1994, Mansolillo responded to DARE's request. Referencing the same statutory exemptions as the Attorney General's office, Mansolillo similarly concluded that requests (a), (b), and (d) were exempt from disclosure, whereas request (c) was publicly accessible in redacted form.

Having exhausted its administrative remedies and having failed in its attempts to obtain all the requested information, DARE filed this action in the Superior Court. Thereafter, both parties filed cross-motions for summary judgment. Before the trial justice the city expressed its willingness "to disclose the final hearing officers' report with their final action taken on it and the final action of the police chief * * * with all of the names of both complainant and the police officer involved having been redacted." On its part DARE reaffirmed its desire to obtain

access to all four categories of records and, in the words of the trial justice, "[did] not seek the names of police officers accused of misconduct and seem[ed] to concede that the law prohibits the disclosure of identities." Nevertheless, the trial justice, motivated by his conviction that "people in a free and democratic society [ought] to have access to governmental records which are 'relevant to the public health, safety and welfare,'" opined that DARE "is entitled to all the records it sought, *without* the redaction of any names." (Emphasis added.)

On June 11, 1996, summary judgment was entered in favor of DARE in accordance with the trial justice's prior decision. The city appeals from this judgment. Thereafter, on June 28, 1996, the Providence Fraternal Order of Police, Lodge No. 3 (FOP), moved to intervene pursuant to Rule 24 of the Superior Court Rules of Civil Procedure. Reasoning that "there is nothing for the FOP to intervene into," the same trial justice denied the FOP's request, although he did grant a temporary fourteen-day stay of the order for the purpose of allowing the FOP to seek a stay from this Court. We granted the stay and the FOP filed a timely notice of appeal from the denial of its motion to intervene.

## II

### Preliminary Matters

At the threshold we address the denial of the FOP's motion to intervene. The FOP concedes that it was aware of the pendency of the ongoing litigation but did not seek to intervene until June 28, 1996, twenty-five days after the trial justice rendered his decision. Nevertheless, the FOP contends that it was only after reading the court's decision that it became cognizant that "there are some factors that implicate the privacy rights of the police officers that * * * were not addressed."[3] In particular the FOP refers to the trial justice's failure to address the Law Enforcement Officer's Bill of Rights,

---

2. The 1997 Reenactment has since redesignated the exceptions as (A) through (W).

3. The record evinces that the motivating factor behind the FOP's motion to intervene was not to file additional motions or complaints with the

Superior Court, but instead to attain intervenor status and to address these issues on appeal. The FOP was permitted to file a brief in this case and was also alotted time during oral argument.

codified in G.L.1956 chapter 28.6 of title 42, as well as the "extremely broad" nature of the trial justice's decision to grant DARE access to all the records it was seeking, but in unredacted form. The trial justice stated that the FOP should have applied to intervene earlier in the case and that at the present time there was simply "nothing for the FOP to intervene into." Accordingly the trial justice denied the FOP's motion.

■ It is well settled that the timeliness of a motion to intervene is a matter committed to the sound discretion of the trial justice. *See Marteg Corp. v. Zoning Board of Review of Warwick,* 425 A.2d 1240, 1242 (R.I.1981). Intervention after final judgment is unusual; consequently the party seeking to intervene must satisfy an especially heavy burden. *Id.* at 1243.

■ Here the FOP had ample time to intervene. The FOP concedes that it was aware of the ongoing litigation yet it decided to stay in the background until after the case had been concluded and only then deciding that the trial justice's decision was adverse to its organization. Furthermore the trial justice's failure to address the Law Enforcement Officer's Bill of Rights was not overlooked, as the FOP suggests, but in fact was never raised. Therefore, for appeal purposes this issue has been waived. *See Montecalvo v. Mandarelli,* 682 A.2d 918, 926 (R.I.1996). Although we accept that the trial justice's decision to permit DARE access to unredacted records, even though DARE itself had only requested redacted files, may have caught the FOP off guard, we conclude that the city has thoroughly litigated this issue and that our ultimate disposition in this case precludes the finding of any prejudice. We also note that to the extent that the FOP is not a party to this matter, it is not bound by the judgment. *See Nisenzon v. Sadowski,* 689 A.2d 1037, 1048–49 (R.I.1997). *See also Picerne v. Redd,* 72 R.I. 4, 11, 47 A.2d 906, 910 (1946). Consequently, we conclude that the trial justice properly denied the FOP's motion to intervene.

■ The second threshold issue we must resolve is the city's claim that DARE lacks standing to bring this claim. The city's

argument is premised on the fact that DARE is a nonprofit *organization* and that the APRA provides a remedy for *individuals* only. *See, e.g.,* § 38–2–8(a) ("[a]ny *person* denied the right to inspect a record of a public body by the custodian of the record may petition the chief administrative officer of that public body for a review" (emphasis added)). Our examination of the record, however, reveals that this issue was never raised before the trial justice and, therefore, is also waived. *See Montecalvo,* 682 A.2d at 926. Nevertheless, during oral argument the city posited that this is an issue involving subject-matter jurisdiction and as a result can be raised at any time. Even though this statement is generally correct, standing is a separate and distinct legal concept from subject-matter jurisdiction. *Compare Mark Realty Inc. v. City of Pawtucket,* 658 A.2d 912, 912 (R.I.1995) (standing requires that a party prove injury in fact) *with Rock Ridge Limited v. Assessor of Taxes,* 667 A.2d 778, 780 (R.I.1995) (subject-matter jurisdiction is invested by law in the court). Therefore, in this case there is no question that the Superior Court had proper subject-matter jurisdiction over this case and that the city waived its objection to standing.

### III

### Access to Public Records

Having disposed of the preliminary issues, we shall next address the principal issue presented by this appeal—whether DARE is entitled to access all the records it has requested and whether these records may be in unredacted form as the trial justice ruled. We conclude that it is not.

With the passage of the APRA, the Rhode Island General Assembly expressed its intent to enlarge the scope of the public's access to documents in the possession of governmental agencies. *See Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1133 (R.I.1992). Although we have long recognized that the underlying policy of the APRA favors the free flow and dissemination of information to the public, we have also previously concluded that "the Legislature did not intend to empower the press and the public with carte blanche to demand all records held by public

agencies." *Id.* at 1134. *See also Providence Journal Co. v. Kane,* 577 A.2d 661, 663 (R.I. 1990); *Pawtucket Teachers Alliance Local No. 920, AFT, AFL–CIO v. Brady,* 556 A.2d 556, 558 (R.I.1989).

In the present case the city argues that the trial justice's decision to grant DARE access to all requested documents in unredacted form is overbroad and in violation not only of specifically enumerated exceptions prohibiting public disclosure but also of the APRA's purpose.

The stated purpose of the APRA is codified at § 38–2–1 and reads:

"The public's right to access to records pertaining to the policy making responsibilities of government and the individual's right to dignity and privacy are both recognized to be principles of the utmost importance in a free society. The purpose of this chapter is to facilitate public access to governmental records which pertain to the policy making functions of public bodies and/or are relevant to the public health, safety, and welfare. *It is also the intent of this chapter to protect from disclosure information about particular individuals maintained in the files of public bodies when disclosure would constitute an unwarranted invasion of personal privacy."* (Emphasis added.)

Commensurate with the APRA's purpose of protecting individuals "when disclosure would constitute an unwarranted invasion of personal privacy," the Legislature has enacted numerous provisions explicitly exempting certain types of records from disclosure. The city contends that the trial justice's failure to consider these statutory exemptions and his decision to utilize a balancing of interests test constitutes reversible error. We agree.

Section 38–2–2(d), as amended by P.L. 1991, ch. 208, § 1, specifically exempts the following records from being deemed public:

"(1) *All records which are identifiable to an* individual applicant for benefits, clients, patient, student, or *employee; including, but not limited to personnel [records],* medical treatment, welfare, employment security, pupil records * * * and all personal or medical information relating to an individual in any files, including information relating to medical or psychological facts, personal finances, welfare, employment security, student performance *or information in personnel files maintained to hire, evaluate, promote or discipline any employee of a public body;*

* * *

"(16) All investigatory records of public bodies pertaining to possible violations of statute, rule or regulation *other than records of final actions taken* provided that all records prior to formal notification of violations or noncompliance shall not be deemed to be public." (Emphasis added.)

Our first opportunity to interpret these provisions occurred in *The Rake v. Gorodetsky,* 452 A.2d 1144 (R.I.1982). In that case the plaintiffs, Brown University students and editors of the school's newspaper, sought Providence police department records regarding civilian complaints of police brutality. We upheld the trial justice's decision ordering that the requested documents be disclosed, noting that since the hearing officer's report contained the action of the police chief thereon, the report represented final action. *Id.* at 1148. In addition we also held that the personnel records exemption was inapplicable because the information identifying the police officers or the civilian complaints had been redacted. *Id.* Subsequent cases have reinforced this holding. *See Edward A. Sherman Publishing Co. v. Carpender,* 659 A.2d 1117, 1122 (R.I.1995) (list containing the names of twenty-eight teachers sent written notices of nonrenewal not subject to disclosure because the notices are not considered "final government action" until teachers are actually terminated); *Sundlun,* 616 A.2d at 1136 (list of state employees identified for potential layoff not considered a public record until final action taken that results in termination); *Kane,* 577 A.2d at 665 ("information that will uniquely identify State employees by name, address, and employment history directly contravenes the clear proscription * * * against disclosure of all records which are identifiable to an individual employee"); *Brady,* 556 A.2d at 559 (management-study report pertaining to ongoing

investigation and identifying specific individuals not a public record). From the foregoing cases a rule has evolved that permits the disclosure of records that do not specifically identify individuals and that represent final action. *See Sundlun*, 616 A.2d at 1136. *See also Carpender*, 659 A.2d at 1122; *Brady*, 556 A.2d at 559.

■ Accordingly we hold that DARE's request (a), seeking all Providence police civilian complaint reports (form 210), are public documents and must be disclosed upon request in redacted form whenever final action occurs. With respect to these civilian complaints we deem final action to have occurred whenever a final determination, whether a finding of "guilty" or "not guilty" or a dismissal based upon default, is made by the chief of police. In addition we are of the opinion that all reports made by the Providence police department hearing officers, request (c), that contain the final disposition of the chief of police thereon are also public records and must be disclosed upon request pursuant to our holding in *The Rake* and its progeny. These records must also be redacted.

In addition to the two exceptions codified in § 38–2–2(1) and (16), DARE also directs our attention to § 38–2–2(d)(4), as amended by P.L.1991, ch. 208, § 1. In pertinent part this provision excludes from disclosure:

"All records maintained by law enforcement agencies for criminal law enforcement; and all records relating to the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal investigation by any law enforcement agency * * * *provided, however, records relating to management and direction of a law enforcement agency* and records reflecting the initial arrest of an adult and the charge or charges brought

against an adult *shall be public.*" (Emphases added.)

Here DARE argues that the emphasized portion of this subsection was added by the General Assembly in 1991 "in recognition of the overwhelming public interest in allowing open scrutinization of the Providence police department's civilian complaint process" and thus provides additional evidence supporting the disclosure of the requested records. With respect to request (d) we agree.

■ It is well settled that "this [C]ourt's duty in construing a statute is to ascertain the intention behind its enactment and to effectuate that intent." *Rhode Island Department of Mental Health, Retardation, and Hospitals v. Doe*, 533 A.2d 536, 539 (R.I.1987). "We determine such intent 'by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning.'" *C & J Jewelry Co. v. Department of Employment and Training, Board of Review*, 702 A.2d 384, 385 (R.I.1997).

■ As we have previously observed, the 1991 amendment was intended to increase the types of information concerning individual state employees that could be made public. *See Carpender*, 659 A.2d at 1121. In addition the disclosure of redacted reports concerning disciplinary actions taken as a result of recommendations made by the Hearing Officers' Division, request (d), cannot be considered an unwarranted invasion of personal privacy since the conditions precedent set forth in § 38–2–2(d)(4), as amended, namely that records be maintained for criminal law enforcement or relate to the detection and investigation of crime, have not been satisfied.[4] Consequently we conclude that the manner in which a law enforcement agency addresses the concerns of its citizens regarding civilian complaints "relat[es] to management and direction of a law enforcement agency." Viewed in its entirety, the decision

---

4. General Laws 1956 § 38–2–2(d)(4), as amended by P.L.1991, ch. 208, § 1, prohibits the disclosure of:

"All records maintained by law enforcement agencies *for criminal law enforcement;* and all records relating to the detection and investigation *of crime* * * * but only to the extent that the disclosure of such records or information

* * * (c) could reasonably be expected to constitute an unwarranted invasion of personal privacy, * * * provided, however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of an adult and the charge or charges brought against an adult shall be public." (Emphases added.)

of the trial justice is consistent with the 1991 amendment, and although the city has no duty to create the records requested in category (d), to the extent that these reports exist and reflect final action, these documents must also be disclosed upon request in redacted form.

■ With respect to DARE's request to obtain a listing of all findings from investigations that were conducted by the Bureau of Internal Affairs, request (b), we note that pursuant to § 38-2-3(f), the city is not required "to reorganize, consolidate, or compile data not maintained by the public body in the form requested at the time the request to inspect such public records was made." Thus we conclude that the city is under no obligation to provide DARE with a listing of any findings from its internal affairs investigation, nor are we satisfied that this request falls within the definition of a public record, which embraces records representing final action.

■ In the case at bar the trial justice granted DARE complete and unfettered access to (a) every Providence police civilian complaint report (form 210) filed from 1986 to the present, (b) a listing of all findings from investigations that were conducted in reference to all civilian complaint reports on record from 1986 to the present, (c) all reports made by the Providence police department hearing officers regarding their decisions from the findings of investigations conducted from 1986 to the present, and (d) reports on all disciplinary actions taken as a result of recommendations made by the Hearing Officers' Division from 1986 to the present. In doing so, the trial justice did not distinguish those reports representing final action or require reports specifically identifying the complainants or the police officers to be redacted. The trial justice also failed to address individually the four categories of records DARE sought and instead raised, *sua sponte*, the issue of disclosure and redaction and determined that it was not the role of a trial justice "to approve agreements or concessions by private parties that could in any way suggest that the court has concluded the statute may be interpreted and applied in a way contrary to

the mandate of the First Amendment to the United States Constitution." The trial justice, however, had no authority to raise this constitutional issue since the parties themselves could not have challenged the validity of a statute that they relied upon before an administrative agency, *see Easton's Point Association v. Coastal Resources Management Council,* 522 A.2d 199, 201 (R.I.1987), nor was it appropriate for the trial justice to award DARE more relief than it sought. *See generally Thomas R.W. v. Massachusetts Department of Education,* 130 F.3d 477 (1st Cir.1997).

■ We also reject DARE's contention that if any document falls within the APRA's enumerated exceptions, the United States and the Rhode Island Constitutions, as well as the terms of the APRA, require the administrative agency to demonstrate that the relevant privacy interests outweigh the public's right to access the records. In *Kane* we rejected a similar argument, stating that "[t]here is no public interest to be weighed in disclosure of nonpublic records. * * * Any balancing of interests arises only after a record has first been determined to be a public record." *Kane,* 577 A.2d at 663. Consequently we hold that the trial justice's determination that because of a police officer's public duty he or she has no reasonable expectation of privacy, although well intentioned, was error.

## IV

### Conclusion

For the foregoing reasons we hold that DARE is entitled to access those documents described in categories (a), (c), and (d) of its request in redacted form; however, DARE is not entitled to access records in category (b) of its request. Accordingly the defendant's appeal is sustained in part, and the judgment appealed from is vacated in part. The papers in this case are hereby remanded to the Superior Court for further proceedings consistent with this opinion.

FLANDERS, Justice, concurring.

Although I agree with the result and with virtually all the reasoning expressed in the majority opinion, I write separately because I do not agree that it would have been "[in]appropriate for the trial justice to award [the plaintiff Direct Action for Rights and Equality] DARE more relief than it sought." This proposition appears to me to be at odds with the mandate of Rule 54(c) of the Superior Court Rules of Civil Procedure, requiring every final judgment to grant whatever relief a prevailing party is entitled to obtain—notwithstanding his or her failure to seek that specific remedy in the complaint.

Rule 54(c) provides in pertinent part as follows:

"Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled *even if the party has not demanded such relief in the party's pleadings.*" (Emphasis added.)

Here DARE's complaint demanded judgment in the form of (among other things) a court decree ordering disclosure of certain records, money damages, and "any other relief this court deems just and proper." The majority concludes that the trial justice could not award DARE a judgment on the constitutionality of certain aspects of the Access to Public Records Act because, among other reasons, DARE never sought such a remedy. I agree with the majority that the trial justice *in this particular instance* was not entitled to pass on the constitutionality of this act because the parties were barred from doing so after having relied upon the validity of the statute in seeking these records from the city.[5] But I disagree with the general proposition that it would have been "[in]appropriate * * * to award DARE more relief than it sought." Rather, as I explain below, I believe that DARE's general prayer for relief (that is, a request for "any other relief this court deems just and proper") would

have permitted the trial court to award DARE relief not specifically requested if it was otherwise entitled to obtain such relief and that, in any event, a trial justice could have awarded such other relief notwithstanding DARE's failure to request it specifically in its pleadings.

"Courts are traditionally encouraged to adjudicate the basic legal claim, even where the plaintiff has failed to seek the precisely correct relief but has instead relied on a general request for 'other appropriate relief.'" *Doe v. United States Department of Justice,* 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also United States v. Marin,* 651 F.2d 24, 30–31 (1st Cir.1981). Unlike *Thomas R.W. v. Massachusetts Department of Education,* 130 F.3d 477 (1st Cir.1997), the case at bar does not involve a situation in which a plaintiff is attempting to avoid mootness by newly proffering a claim for a different form of relief on appeal when the original claim for relief has since become moot and no longer forms the basis of a live controversy. *Id.* at 480 (despite general prayer for relief, plaintiff's prayer for reimbursement—raised for the first time in an appellate-reply brief—does not save case from its otherwise moot status). Simply put, DARE is not attempting to "extract[ ] [a prayer for specific relief not pleaded in its complaint] late in the day from [a] general prayer for relief * * * solely to avoid otherwise certain mootness." *Arizonans for Official English v. Arizona,* 520 U.S. 43, ——, 117 S.Ct. 1055, 1070, 137 L.Ed.2d 170, 195 (1997) (disallowing plea on appeal for nominal money damages when the plaintiff's changed circumstances mooted the claims stated in her complaint).

In other words the failure of a pleading to demand a particular kind of relief does not preclude a trial court from awarding any remedy that the plaintiff is otherwise entitled to receive "because Rule 54(c) commands the granting of *any appropriate* relief."[6] 10

---

**5.** Because the constitutional aspect of the trial justice's opinion was a *separate substantive issue* that was neither raised nor litigated by the parties below, I believe that Super.R.Civ.P. 54(c) creates no right to relief premised on that issue. "A substantive law restriction on the available relief must be respected; relief beyond that au-

thorized by the substantive law may not be awarded under Rule 54(c)." 10 *Moore's Federal Practice* § 54.72[2], at 54–137 (3d ed. 1998).

**6.** *See also Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 66, 99 S.Ct. 383, 387, 58 L.Ed.2d 292, 299 (1978) (although claims lacking sub-

*Moore's Federal Practice* § 54.70[1], at 54–125 (3d ed. 1998). (Emphasis added.) Moreover, because a court may grant any relief to which a complainant is entitled "even if the party has not demanded such relief in the party's pleadings," *see* Super.R.Civ.P. 54(c), "a failure to demand the appropriate relief will not result in a dismissal. *The question is not whether plaintiff has asked for the proper remedy but whether he is entitled to any remedy.*" 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil 2d* § 2664, at 153–54 (2d ed. 1983). (Emphasis added.) *See also* 1 R. Kent, *R.I.Civ.Prac.* § 12.9, at 114 (1969) ("[t]he complaint should not be dismissed because its allegations do not warrant the type of relief demanded if they do support the granting of some relief").

The relief available to DARE was a question to be decided not by the specific relief DARE sought in its complaint but rather by the types of relief, if any, DARE was entitled to obtain based upon the relevant factual circumstances and the applicable substantive law. *See* 10 *Moore's Federal Practice*, § 54.72[1][a] at 54–132.

---

stantive merit should be dismissed, omissions in a prayer for relief do not bar redress of meritorious claims); 10 *Moore's Federal Practice*, § 54.72[1][a] at 54–130 ("available relief is determined by the proof, not by the pleadings, and it is the duty of the court to grant all relief to which a party is entitled on that proof").